**NCNB TEXAS NATIONAL BANK, Plaintiff,**

**Federal Deposit Insurance Corporation, as Receiver of First RepublicBank Dallas, National Association (formerly known as RepublicBank Dallas, N.A.), Plaintiff–Intervenor,**

v.

**GOLDENCREST JOINT VENTURE, a Texas Joint Venture, Perry E. Bodin, George Edward Kelly, Defendants.**

Civ. A. No. 3–90–0189–H.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 14, 1990.

Robert T. Mowrey and Susan L. Karamanian, Locke Purnell Rain Harrell, P.C., Dallas, Tex., for plaintiff.

Mark H. How, Denton & Guinan, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are Plaintiffs' Motion for Summary Judgment, filed April 24, 1990; Defendants' Response, filed May 15, 1990; and Plaintiffs' Reply, filed May 23, 1990.

This is a suit on two promissory notes and two guaranties. Plaintiff NCNB is the assignee of the two notes and guaranties,

which were originally made by Defendants in favor of First RepublicBank of Dallas ("RepublicBank"), a defunct banking institution. The FDIC as Receiver for RepublicBank transferred the notes and associated guaranties at issue in this case to the bridge bank, NCNB.

Defendants have asserted a number of affirmative defenses and counterclaims. The Court addresses them individually below.

*Wrongful Foreclosure*

Defendants allege that NCNB wrongfully foreclosed on the property securing the deeds because its bid was grossly inadequate. An allegation of inadequate price is insufficient to state a claim for wrongful foreclosure unless evidence of an irregularity which contributed to the sale of the property at an inadequate price is also presented. *See American Sav. & Loan Ass'n v. Musick*, 531 S.W.2d 581, 587 (Tex.1975). Since Defendants have failed to allege or prove such an irregularity, summary judgment is GRANTED in favor of Plaintiffs on this claim, and the claim is DISMISSED.

*Usury*

A claim of usury, when based upon alleged dealings and representations made by the failed institution that are not recorded in the books of that institution, is barred by the *D'Oench* doctrine. *See D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379 (5th Cir. 1990). Defendants' usury claim relies upon undocumented allegations of representations and actions by employees of RepublicBank. Accordingly, summary judgment is GRANTED for Plaintiffs on this claim, and Defendants' usury claim is DISMISSED.

*Other Claims and Defenses*

Defendants have also raised defenses and counterclaims of breach of the duty of good faith and fair dealing, intentional tortious acts (of unknown variety), estoppel by virtue of RepublicBank being the alter ego of Goldencrest, failure of consideration, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. The conduct which gives rise to these claims is entirely the unrecorded actions and representations of employees of RepublicBank. No documents to substantiate these claims have been produced in response to the motion for summary judgment.[1]

Defenses and counterclaims based upon alleged conduct and misrepresentations of insured institutions are barred by the doctrine of *D'Oench* and its progeny. In a recent similar case, the Fifth Circuit ruled against virtually every argument raised by Defendants. In *Kilpatrick v. Riddle*, 907 F.2d 1523 (5th Cir.1990), the Fifth Circuit established the following rules:

(1) If D'Oench precludes an affirmative defense, it also bars a counterclaim based upon the same facts. *See id.* at 1528.

(2) Borrowers who execute facially unqualified obligations may not prevent a federal receiver from collecting by claiming they were induced to execute the obligations by fraud or unwritten representations. *See id.* at 1527–28.

(3) The *D'Oench* doctrine applies to assignees of the FDIC. *See id.* at 1528.

Following these rules, the Court finds that Defendants' affirmative defenses and counterclaims are barred by the *D'Oench* doctrine. Accordingly, summary judgment is GRANTED in favor of Plaintiffs, and the affirmative defenses and counterclaims are DISMISSED.

*Enforcement of the Notes and Guaranties*

To make out a prima facie case for enforcement of the notes and guaranties, NCNB must establish the following: (1) the existence of the notes and guaranties; (2) that Defendants signed the instruments;

---

1. Defendants request that they be given an opportunity for discovery to enable them to develop alternative bases for these claims. The request is denied since Defendants have failed to take any discovery during the two years this case has been pending. *See* Plaintiffs' Reply at 2.

(3) that Plaintiff is the current holder of the instruments; and (4) that a sum certain is due and payable. *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.—Houston 1983, writ dism'd). NCNB has met the first three requirements, but has failed to satisfy the fourth.

■ To understand NCNB's difficulty in doing so requires examining the provision in the notes concerning the interest rates to be applied to the amounts due under the notes. It reads: "After default or maturity, principal and past-due interest shall bear interest at the highest rate permitted by applicable law or, if no such maximum rate is established by applicable law, then at the Applicable Rate plus five percent (5%) per annum." A later paragraph provides that Tex.Rev.Civ.Stat.Ann. art 5069–1.04 applies to the note.

NCNB presented an affidavit stating the total amount of interest due, but did not explain the interest rate used to calculate that sum. Defendants argue that such a conclusory affidavit is insufficient. The Court agrees.

First, NCNB has not shown whether a maximum interest rate exists and what that rate is.

Second, Defendants have raised an interesting question as to the amount of interest to be charged if Texas law does not provide a maximum rate. Both notes tie the post-default interest rate to the "Applicable Rate." The Applicable Rate is RepublicBank's prime rate plus one and one half percent per annum. After maturity or default, the interest rate to be charged in the absence of a statutory maximum is the Applicable Rate plus five percent, or a total of six and one half percent above RepublicBank's prime rate.

Defendants have argued that once RepublicBank was closed, RepublicBank's prime rate ceased to exist. Defendants then assert that the RepublicBank prime rate must be zero, making the Applicable

Rate one and one half percent.[2] Adding five percent to the Applicable Rate, Defendants conclude that after the note matured, Defendants argue that NCNB should have charged only six and one half percent interest.

Defendants argue in the alternative that because the parties did not provide for an interest rate to be charged if RepublicBank failed, NCNB must apply the default interest rate of six percent, applicable under Tex.Rev.Civ.Stat.Ann. Art. 5069–1.03 in all cases where the parties have not agreed on a rate of interest.

NCNB did not address this argument in its reply, nor did it explain in its supporting affidavits what interest rate it did use in calculating the interest due. Since it is unclear at this time what the appropriate interest rate should be, and what interest rate NCNB actually used, NCNB has failed to meet the fourth requirement of the prima facie case: the establishment of a sum certain due and owing on the notes. Accordingly, summary judgment on the notes and guaranties is DENIED without prejudice to the reurging of the motion upon proper summary judgment evidence.

SO ORDERED.

---

2. In their response, Defendants assert that the correct rate of interest is five percent—0% for the RepublicBank prime rate plus the five percent tacked on post maturity. Defendants appear to have misread the notes, which add the five percent on to the Applicable Rate (defined as the prime rate plus one and one half percent). For clarity, the Court added the one and one half percent back into the equation.