**NCNB TEXAS NATIONAL BANK, Successor In Interest to First Republic Bank of Dallas, Successor In Interest to Interfirst Bank of Dallas, N.A., Plaintiff–Appellee,**

v.

**Robert E. KING, Defendant–Counter Plaintiff–Appellant,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver For First Republic Bank of Dallas, N.A., Counter–Defendant–Appellee.**

No. 90–1669.

United States Court of Appeals, Fifth Circuit.

Dec. 10, 1991.

Michael D. Mosher, Parish, Tex., for Robert E. King.

Ronald Davis, Baskin & Novakov, Dallas, Tex., for F.D.I.C.

Don Colleluori, Ernest E. Figari, Jr., A. Erin Dwyer, Figari & Davenport, Dallas, Tex., for NCNB Texas Nat. Bank.

Before THORNBERRY, JOLLY, and SMITH, Circuit Judges.

PER CURIAM:

This appeal arises from a suit on a promissory note and four guarantees executed by King in favor of NCNB's predecessor-in-interest, InterFirst Bank Dallas ("InterFirst"). King's pleadings and papers al-

lege the following factual basis for recovery:

## I

In 1980 InterFirst sought out King's business. He was then operating a Trailmobile franchise in Tulsa, Oklahoma. After cultivating King's business, InterFirst financed the purchase and restructuring of Glenn Brothers Trucking Company ("Glenn Brothers"). As part of the restructuring, InterFirst forced King to accept a former InterFirst employee, Garland Head, as a "turn around" expert at a $100,000 per year salary. Head proceeded to ruin Glenn Brothers through mismanagement and self-dealing. After Head had significantly increased Glenn Brothers' debt, King ordered Glenn Brothers shut down. Subsequently, InterFirst extended further credit to Glenn Brothers on Head's instructions. InterFirst did so because it was undersecured at the time and apparently believed Head's claim that a further cash infusion would turn the company around and prevent bank losses.

To secure his signature on the $1,065,000 note at issue here, which represented previous advances to Glenn Brothers, InterFirst falsely told King that he was already liable on the debt. As part of this same transaction, InterFirst demanded that King cease doing business with any other bank other than InterFirst, and demanded that he transfer all of the banking business of his separate company, Tulsa Trailer & Body ("TTB"), from two Oklahoma banks to InterFirst. In exchange for moving this business, InterFirst agreed not to call any of King's guarantees of Glenn Brothers' debt, and to extend those debts and guarantees.

## II

In September 1983, InterFirst commenced this action against King, seeking the unpaid balance due and owing under the note and the four guarantees. King responded by asserting numerous affirmative defenses and counterclaims against InterFirst. During the pendency of this action, InterFirst merged with RepublicBank Dallas to form First Republic. Accordingly, First Republic became the owner and holder of the notes and guarantees. About a year later, First Republic was declared insolvent and the FDIC was appointed as receiver. The FDIC created a "bridge bank" known as JRB Bank, N.A., Dallas, Texas ("JRB"), and transferred the note and guarantees executed by King to JRB. NCNB then purchased an ownership interest in JRB and renamed it NCNB Texas National Bank.

The FDIC as receiver was granted leave to intervene in this action on March 1, 1989, but it was several months before the parties were properly aligned, and the district court ultimately required NCNB to intervene. In response to NCNB's complaint in intervention, King filed a new answer and counterclaims, wherein he asserted for the first time a claim under the Bank Tying Act.[1] King asserted that the conduct of InterFirst, conduct that was attributable to NCNB, was illegal under the Bank Tying Act, voided the loan and gave rise to damages.

NCNB and the FDIC then filed motions for summary judgment, relying on the statutory and common law protections afforded the FDIC and its assignees in enforcing obligations owed to a failed bank. In response to these summary judgment motions, King filed an affidavit in which he reasserted his Bank Tying Act claim.

The district court held that NCNB was entitled to summary judgment based on the loan documents and awarded the amount owed under them plus interest. The district court also granted summary judgment

---

1. 12 U.S.C. § 1972(1) provides, in pertinent part:
   (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration of any of the foregoing, on the condition or requirement ...
   (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than as a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

in favor of NCNB and the FDIC with respect to King's affirmative defenses and counterclaims. The court dismissed King's affirmative defenses and counterclaims because they were all based upon oral side agreements in violation of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), or because they were personal defenses rather than real defenses and therefore were unsupportable in the light of the federal holder in due course doctrine.

### III

On appeal, King argues only that the district court erred in holding that his Bank Tying Act claim was barred by *D'Oench, Duhme* or the federal holder in due course doctrine. We conclude that the district court correctly held that King's Bank Tying Act claim was barred by the *D'Oench, Duhme* doctrine, and therefore, we affirm the district court's order and decision.[2]

King contends that he has established a Bank Tying Act claim and that it is not barred by the *D'Oench, Duhme* doctrine. King claims that as a condition for extending a call on the guarantees and to executing a new $1,065,000 note, InterFirst forced King to transfer all of his banking business generated by TTB to InterFirst. King contends that the two banks from which the business was transferred were competitors of InterFirst and that the condition was not reasonable or customary in the banking industry. King argues that InterFirst then repudiated its own agreement and called the loans it had agreed to extend. Basically, King's claim is that InterFirst agreed to finance TTB as part of the deal, and then refused to do so. He contends that because TTB lost credit at a critical time in its expansion, he experienced losses in excess of $15,000,000. His claim is wholly dependent on oral promises made by the officers of InterFirst to King to provide financing for his other businesses.

### IV

The *D'Oench, Duhme* doctrine holds that a borrower may not bring defenses against the collection efforts of the federal receiver of a failed bank, which are based on unrecorded agreements with the failed bank. *D'Oench,* 315 U.S. 447, 459–60, 62 S.Ct. 676, 680–81; *Kilpatrick v. Riddle,* 907 F.2d 1523, 1526 (5th Cir.1990), *cert. denied, Rogers v. FDIC,* — U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). The *D'Oench, Duhme* doctrine also protects the assignees of the FDIC. *Kilpatrick,* 907 F.2d at 1528; *Bell & Murphy & Assocs. v. Interfirst Bank Gateway,* 894 F.2d 750, 754–55 (5th Cir.1990). Defenses that are framed as causes of action are also barred by the doctrine. *Kilpatrick,* 907 F.2d at 1528; *Bell & Murphy,* 894 F.2d at 753. Thus, it appears that the *D'Oench, Duhme* doctrine clearly bars King's Bank Tying Act claim because it is based on unrecorded agreements with InterFirst.

King argues that the district court's holding that the *D'Oench, Duhme* doctrine bars his Bank Tying Act claim somehow nullifies or repeals the Bank Tying Act.[3] This characterization of the district court's holding is inaccurate. The court's application of the *D'Oench, Duhme* doctrine did not negate the Bank Tying Act; it only held that a private claim thereunder, which is based on unrecorded agreements, cannot be asserted against the FDIC or its transferees.

This court recently addressed a similar argument in *Kilpatrick v. Riddle,* 907 F.2d 1523 (5th Cir.1990), cert. denied, *Rogers v. FDIC,* — U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991). There, the plaintiffs

---

**2.** Because we affirm the district court based on its conclusion that the *D'Oench, Duhme* doctrine bars King's Bank Tying Act claim, we do not reach the issue of whether the federal holder in due course doctrine also bars this claim.

**3.** In his brief, King erroneously states that the district court held that King's Bank Tying Act claim was barred by 12 U.S.C. § 1823(e). The district court's holding did not depend on § 1823(e). Most of King's arguments in his brief concern § 1823(e), but because we have held that § 1823(e) and *D'Oench, Duhme* bar similar defenses we will address his arguments as if they were also made under *D'Oench, Duhme. Kilpatrick,* 907 F.2d at 1526 n. 4.

were seeking rescission of promissory notes they executed in favor of a bank. The bank had failed and the FDIC had acquired the notes through its capacity as receiver. The plaintiffs contended that the notes were invalid because they were obtained through fraud in violation of the federal securities laws. The defendants, the FDIC and one of its assignees, argued that the plaintiffs' claims were barred by *D'Oench, Duhme.* The plaintiffs countered that, as a policy matter, the *D'Oench, Duhme* doctrine could not trump the federal securities laws. We held that the decision in *Langley v. FDIC,* 484 U.S. 86, 91–92, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987), extended the *D'Oench, Duhme* doctrine to bar defenses that accused the failed bank of procuring the notes through fraud. *Kilpatrick,* 907 F.2d at 1527. We further held that the *D'Oench, Duhme* doctrine barred plaintiffs' claims, despite the fact that the claims were based on federal securities laws. "It is not the nature or enforceability of an agreement between a bank and borrower that controls the application of the *D'Oench, Duhme* doctrine; if the agreement is unwritten, D'Oench, Duhme applies." *Kilpatrick,* 907 F.2d at 1529.

We held that the policy underlying the doctrine mandated that result:

> It is the "federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 457, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942). This policy is undermined just as much by unrecorded representations regarding securities as by secret agreements that condition the enforceability of obligations to a federally insured bank. We must therefore conclude that claims under the federal securities laws provide no basis

from which to carve an exception from the *D'Oench, Duhme* doctrine. *Kilpatrick,* 907 F.2d at 1529.

The same reasoning applies in this case. The policy of protecting the FDIC and its assignees would be undermined by allowing defenses or counterclaims based on a Bank Tying Act claim that involves an unrecorded agreement between the executor of the note and the failed bank. We therefore hold that the district court correctly held that King's Bank Tying Act claim is precluded by the *D'Oench, Duhme* doctrine.[4]

For the foregoing reasons, the decision of the district court is

AFFIRMED.

---

4. King also argues that the district court's decision is inconsistent with this court's opinion in *Amerifirst Properties, Inc. v. FDIC,* 880 F.2d 821 (5th Cir.1989). This court did not discuss the *D'Oench, Duhme* doctrine in *Amerifirst.* In *Amerifirst,* the bank failed and the FDIC intervened only after the case was already on appeal. *Amerifirst,* 880 F.2d at 823 n. 2. The FDIC did not attempt to assert the *D'Oench, Duhme* doctrine as a defense to the plaintiff's Bank Tying Act claim. Thus, *Amerifirst* is not apposite authority in this appeal.