**EASTSIDE CHURCH OF CHRIST et al., Appellants,**

v.

**NATIONAL PLAN, INC., et al., Appellees.**

**No. 24500.**

United States Court of Appeals Fifth Circuit.

March 12, 1968.

Rehearing Denied April 12, 1968.

William Burrow, Golden, Burrow, Potts & Boeckman, Dallas, Tex., for appellants.

Rufus S. Garrett, Jr., Fort Worth, Tex., for appellees.

Before BROWN, Chief Judge, and BELL and THORNBERRY, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This case presents the not unusual question of which of the innocent parties, appellants on the one hand and appellees on the other, must bear a loss sustained through the defalcation of a third party with respect to church bonds. The appellants, seven churches, are seeking recovery against the two appellees, National Plan, Inc. and its president and principal owner, Robert H. Knox. The churches, asserting that they never received payment for certain bonds which they issued and which were purchased by National, claim that they are entitled to recover the bonds still in National's possession and damages for any which National has transferred to innocent purchasers. National answers that the bonds are valid and subsisting obligations of the churches. The District Court agreed with National. Unfortunately we cannot finally resolve the question in full. We affirm in part; but, because of a basic error of law in the District Court in the area of securities regulation, the case must be reversed in part and remanded for further proceedings.

### I.

The judgment will be affirmed as to two procedural issues. One, the court did not err under the circumstances in severing what forms the subject matter of this appeal from a complex suit involving a total of twenty-two churches as plaintiffs, twenty-seven defendants and almost two million dollars in bonds. Rule 42(b), F.R.Civ.P., cf. Rossano v. Blue Plate Foods, Inc., 5 Cir., 1963, 314 F.2d 174; Fidelity & Casualty Company of New York v. Mills, 5 Cir., 1963, 319 F.2d 63. The judgment as entered is appealable. Rule 54(b), F.R.Civ.P., Sears, Roebuck & Co. v. Mackey, 1956, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297. Appellee, National Plan, Inc., intervened in the litigation as a defendant and filed a cross claim for declaratory judgment that it was a holder in due course of the particular bonds which the seven appellant churches are seeking to recover or for which they claim damages. Appellants then named appellee Knox as a defendant. The procedure adopted was discretionary and there is nothing to show an abuse of discretion. Moreover, no objection whatever was lodged by appellants to the procedure.

Two, the contention that appellants were denied a jury trial is frivolous. They did not seek a jury trial. They made no objection to proceeding without a jury. The idea of a jury trial was first raised in this court through reliance on a request for jury trial made by two of the defendants who are not involved in the cause before us.

The judgment will also be affirmed on one substantive question. The churches charged appellees generally with participation in a conspiracy to defraud them in violation of § 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q (a), and certain named sections of the

Securities Exchange Act of 1934.[1] This charge was over and above charges of individual fraud, contained in another part of the complaint and to be hereinafter discussed, based on alleged violations of Rules 15c1–4 and 15c2–4 promulgated under the Securities Exchange Act. The District Court found that there was no evidence of fraud on the part of appellees in the questioned transactions. These findings are not clearly erroneous and there the matter ends insofar as the general charge of a conspiracy to defraud is concerned.

## II.

This leaves for decision whether appellees or either of them are liable to the churches, or any of them, by reason of the breach as claimed of an additional section of the Securities Exchange Act, § 15(a) (1), or of the rules promulgated thereunder, Rules 15c1–4 and 15c2–4, supra. National Plan proceeded for declaratory judgment on the premise that the bonds were exempt from regulation under the securities law; hence National Plan was exempt from registration, and that it need only show that it was a holder in due course to establish that the churches were obligated on the bonds.

The District Court concluded that the bonds were exempt securities under the Exchange Act and that there was no violation of the registration provisions of that Act by National. In addition, the judgment provides if there were violations of any securities law in connection with the bond transactions, they did not materially deny the churches any protection which the law was designed to afford. As will be seen, these two holdings are incorrect and require reversal. The Securities Exchange Act pervades the entire case and the transactions involved.[1a]

This brings us to the pertinent facts. National acquired the bonds in the following manner. Paden, a church contractor, agreed to construct buildings for each of the appellant churches. To finance the construction of the buildings, the churches issued bearer bonds to Paden, either selling them to him outright or delivering them to him as agent to sell, or as the church witnesses said, "to place" the bonds on behalf of the churches. The churches claim that Paden was obligated to remit to them the full face value of the bonds, without commission, either promptly or, in the case of certain bonds, as the money would be needed for construction of the buildings. Paden sold bonds in the face amount of $215,750 to National at a discount. In the case of a few the discount was ten per cent; in the case of most, fifteen per cent. National, as directed by Paden, paid for the bonds either directly to Paden or to a company called World Oil & Gas of Delaware, Paden having told National that World Oil & Gas would absorb the discount and pay Paden the full face value of the bonds as he needed it for the church construction projects. The evidence was that Paden failed to remit to the churches on the National purchases.

The churches entrusted Paden with the bonds. They issued the bonds in negotiable form. They printed on the face of each bond: "This is a bearer bond and as such may be transferred by delivery". In addition, each bond bore the certificate that payment had been received for the bond but, of course, with respect to those bonds purchased by National on the representation from Paden that he was acting as agent for the churches in an effort to sell the bonds, National knew that the churches had not been paid.

The churches claim that National purchased the bonds in violation of three provisions of the federal securities laws. First, they assert that National was an unregistered broker-dealer and, accordingly, that National's purchase of the

1. §§ 10(b) and 15(c) (1) of the Exchange Act, 15 U.S.C.A. §§ 78j(b) and 78o(c) (1), and Rules 10b–5 and 15c1–2 thereunder, 17 CFR § 240, 10b–5, 15c1–2.

1a. The court sought and obtained supplemental briefs after argument from the parties as well as amicus curiae briefs from the Securities and Exchange Commission.

bonds violated § 15(a) (1) of the Act, 15 U.S.C.A. § 78o(a) (1), prohibiting an unregistered broker-dealer from effecting securities transactions. Second, they claim that National violated the antifraud provisions in § 15(c) (1) of the Exchange Act, 15 U.S.C.A. § 78o(c) (1), and Rule 15c1–4 thereunder, 17 CFR § 240.15c1–4, by failing to send written confirmations of the purchases to the churches. Third, they claim that National violated the antifraud provisions in § 15(c) (2) of the Exchange Act, 15 U.S.C.A. § 78o(c) (2), and Rule 15c2–4 thereunder, 17 CFR § 240.15c2–4, in that it neither transmitted its purchase payments directly to the churches nor deposited the money in a separate bank account or in an escrow account for their benefit. The churches claim that, as a result of these violations, National's purchases of the bonds are void under § 29 (b) of the Exchange Act, 15 U.S.C.A. § 78cc(b), thus entitling the churches to the relief sought.

We consider first the failure of National to register and the result which ensues because of § 15(a) (1) of the Act.[2] It was stipulated that National had not registered as either a broker or dealer under the Act, that the mails were used in the transactions in question and that they took place in interstate commerce.

One church securities exemption is from the registration provisions of the Securities Act of 1933, something not here involved.[3] We are concerned with the Securities Exchange Act of 1934. Section 12(g) (2) (D) of that Act, 15 U.S.C.A. § 78l(g) (2) (D), contains an exemption of church bonds, but that exemption, again, relates only to their registration. It does not relate to the antifraud

or broker-dealer registration provisions. There is simply no exemption in the Exchange Act from these provisions even when the broker or dealer is handling church bonds.

The District Court did not decide whether National was a broker or a dealer within the meaning of the Exchange Act. This question was not reached due to the erroneous view that church bonds were exempt securities even for the purposes of the broker-dealer registration provisions. Section 3(a) (4) of the Exchange Act, 15 U.S.C.A. § 78c(a) (4), defines a broker as any person engaged in the business of effecting transactions in securities for the account of others. The evidence shows conclusively that National was a broker. Mr. Knox testified that the principal business of National was to "put on bond issues to build churches". He stated that National went to churches where they had been requested to put on bond programs, assisted the church in doing all of the legal work concerning the bond program, took care of necessary printing, handled all of the paper work in connection with the bond issue, acted as fiscal agent and trustee of the property, and directed the bond sales program. He testified that the sales were made throughout the country.

Section 3(a) (5) of the Exchange Act, 15 U.S.C.A. § 78c(a) (5), defines a dealer as any person engaged in the business of buying and selling securities for his own account, through a broker or otherwise. The evidence demands a finding that National was so engaged. National purchased many church bonds prior to the ones in question for its own account as a part of its regular business and sold some of them. Thus National was a

2. Section 15(a) (1) of the Exchange Act provides:

No broker or dealer (other than one whose business is exclusively intrastate) shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, unless such broker or dealer is registered in accordance with subsection (b) of this section.

3. Section 3(a) (4) of that Act, 15 U.S.C.A. § 77c(a) (4), the exemption provision, is made expressly inapplicable to the antifraud provisions of that Act by § 17(c), 15 U.S.C.A. § 77q(c), supra.

broker and a dealer within the meaning of the Act. See 2 Loss, Securities Regulation, 1295, 1297 (2d ed. 1961).

It follows that the purchases which National made from the appellant churches through their agent Paden were in violation of § 15(a) (1) of the Exchange Act, supra. The question next arises whether appellants may void these transactions because National acted in violation of § 15(a) (1) of the Act. Section 29(b) of that Act, 15 U.S.C.A. § 78cc(b), supra, provides that "every contract made in violation of any provision of this chapter or any rule or regulation thereunder * * shall be void * * * as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract * * * ". There are certain exceptions to this voiding provision but none is applicable here. Section 29(b) also contemplates civil suit for relief by way of rescission and damages where the transactions are void. Osborne v. Mallory, S.D.N.Y., 1949, 86 F. Supp. 869, 879; Kardon v. National Gypsum Company, E.D.Pa., 1946, 69 F.Supp. 512, 514; Geismar v. Bond & Goodwin, S.D.N.Y., 1941, 40 F.Supp. 876, 878; and see dictum in Goldstein v. Groesbeck, 2 Cir., 1944, 142 F.2d 422, 154 A.L.R. 1285, cert. den., 323 U.S. 737, 65 S.Ct. 36, 89 L.Ed. 590.

■ Without more, it appears that appellants may void these transactions but National contends that appellants are nevertheless not entitled to relief unless they can establish that any harm which they suffered was caused by National's failure to register. See Restat. of Torts, (2 Ed.), § 286. However, the Act requires only that appellants be in the class of persons whose interest the Act was designed to protect. Cf. Hooper v. Mountain States Securities Corporation, 5 Cir., 1960, 282 F.2d 195, 200–202. In our view a more stringent requirement would be contrary to the express mandate of § 29 (b).

Under § 15(a) (1), National was prohibited from effecting the transactions here involved and thus violated the Act by entering into those transactions. Under the voiding provision of § 29(b), it is sufficient to show merely that the prohibited transactions occurred and that appellants were in the protected class. We have found no case precisely in point but a similar voiding provision in § 26 (b) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79z(b), has been construed in accord with our holding. See Goldstein v. Groesbeck, supra. The case of Downing v. Howard, 3 Cir., 1947, 162 F.2d 654, 657–678, also involving the Holding Company Act, is not to the contrary; indeed, the court there expressly refrained from reaching the question decided in Goldstein v. Groesbeck. See also 2 Loss, supra, pp. 1757–1763, fn. 248.

The harsh remedy which this view dictates, even under the circumstances of this case where the churches chose the unfaithful agent, seems to be what Congress intended. The fact that Congress removed certain violations from the voiding sanction of § 29(b) lends support to our construction of § 29(b) in this case. See §§ 29(b), 15(c) (2) and 15(c) (3), 15 U.S.C.A. §§ 78o(c) (2) and (3), and 15 U.S.C.A. § 78cc(b). The requirement that brokers and dealers register is of the utmost importance in effecting the purposes of the Act. It is through the registration requirement that some discipline may be exercised over those who may engage in the securities business and by which necessary standards may be established with respect to training, experience, and records. See §§ 15(b) (5) and 17(a) of the Act, 15 U.S.C.A. §§ 78o(b) (5) and (8) and 78q(a).

■ Appellees urge that such consequences are inequitable in light of the conduct of the churches in turning the bonds over to Paden as their agent for the purposes of sale and collection of the proceeds therefrom. They contend that the churches should account for the monies paid to Paden by National but which were not paid to the churches by Paden. This does not follow in light of the voiding provision. The transactions

were void *ab initio* and National must account for such of the bonds as were owned by the churches and for which the churches have not been paid.

■ The contention of the appellants that National violated Rule 15c1–4 by failing to send written confirmations of its purchases to the churches is rejected. This rule is not applicable under the facts before us. Rule 15c2–4 is also inapplicable.

### III.

■ Because of our holding that those transactions involving purchases from the churches are void due to National's failure to register, the case must be remanded to the District Court for further findings and conclusions.[4] It is the procedural policy of the federal appellate courts, where disputed issues are involved, that findings of fact and conclusions of law be made in the District Courts. Rule 52(a), F.R.Civ.P., Kelley v. Everglades District, 1943, 319 U.S. 415, 421, 422, 63 S.Ct. 1141, 87 L.Ed. 1485; Mladnich v. United States, 5 Cir., 1967, 371 F.2d 940; Employers' Liability Assurance Corporation, Ltd. v. Weeden, 5 Cir., 1960, 274 F.2d 809; Victory Towing Company, Inc. v. Bordelon, 5 Cir., 1955, 219 F.2d 540. These may be made on the same record or on the record as supplemented, all in the discretion of the District Court. Cf. Kelly v. Page, 5 Cir., 1964, 335 F.2d 114, 118.

■ Some additional questions will arise on remand. Without in anywise limiting the number of those questions, it does appear that National would not be liable to the churches on any transaction where no privity of contract existed between the church and National. This is on the theory that the church would be a stranger to the transaction. See Natkin v. Exchange National Bank of Chicago, 7 Cir., 1965, 342 F.2d 675. No evidence whatsoever was offered to show that the churches were anything more than strangers to the transactions wherein National purchased $18,500.00 in bonds from Johnson and McDonald on the representation that they had obtained the bonds as fees for printing. We think it proper to excise this amount from the case at this time since there is no dispute whatever concerning these facts.

■ It also follows from the privity rule that National will be liable only on those purchases which were made from Paden acting for the appellant churches and not from Paden individually. In two instances, representatives of the churches testified that they sold the bonds to Paden. Paden disputed this and thus the District Court must make specific findings of facts in this regard.

Another question for the District Court is the liability, if any, of appellee Knox. This question has not been briefed. Indeed, it has not been mentioned. On the trial, counsel for appellees stated that the same issue was presented as to National and Knox: Whether National Plan was a holder in due course. There has been no inquiry whatever into what liability would attach to Mr. Knox individually or as president of National in the present posture of the case.

Likewise, we do not reach any question of damages which may exist by reason of the difference in the face value of the bonds and any discount which the churches may have contemplated or any commission which may have been involved for Paden. This is true also as to questions of damages which may exist for any other reasons such as the churches, or any of them, if such proves to be the case, having permitted Paden to keep any part of the proceeds of the sales to National.

Affirmed in part; reversed in part; remanded for further proceedings not inconsistent herewith.

---

4. Findings of fact 12 and 16 are to the effect that some of the bonds were received by Paden as fees. The record demonstrates that none of the bonds in litigation fall into this category and thus these findings, although immaterial, would seem to be clearly erroneous.