428 F.2d 401
 McGREGOR BOULEVARD CHURCH OF CHRIST, a Charitable Corporation, et al., Plaintiffs-Appellees,
v.
J. B. WALLING et al., Defendants,
General Plan, Inc. (formerly National Plan, Inc.), Intervenor-Defendant-Appellant.
Robert H. Knox, Defendant-Appellant.
 No. 27817.
 United States Court of Appeals, Fifth Circuit.
 June 18, 1970.
 Rehearing Denied July 15, 1970.
 
 Rufus S. Garrett, Jr., Ft. Worth, Tex., for appellants.
 William Burrow, Dallas, Tex., for appellees.
 Before RIVES, GOLDBERG and GODBOLD, Circuit Judges.
 RIVES, Circuit Judge:
 
 
 1
 This case involves the purchase by appellant General Plan, Inc.,[1] of bonds payable to bearer issued by each of several church corporations.[2] Initially the district court held General to be a holder in due course of the bonds, and further held inapplicable Section 29(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78cc(b), which provides generally that contracts made in violation of the Exchange Act shall be void. The district court's first judgment was therefore in favor of General and of its president and principal owner, Knox.
 
 
 2
 On appeal this Court affirmed in part, reversed in part, and remanded. Eastside Church of Christ v. National Plan, Inc., 1968, 391 F.2d 357, cert. den. 393 U.S. 913, 89 S.Ct. 240, 21 L.Ed.2d 198 (1968). With the comment that "some additional questions will arise on remand," this Court remanded the case to the district court for further findings and conclusions on: (1) whether or not privity of contract existed between General and the churches; (2) the liability of Knox, and (3) damages.
 
 
 3
 On remand the district court found additional evidence not needed, but considered amended pleadings, the record of the first trial, this Court's opinion, and the argument of counsel. So far as here pertinent, the district court found: (1) that Paden did not purchase any of the bonds but acted as agent of the churches in selling them to General, and hence that privity existed between the churches and General; (2) that Knox was jointly and severally liable with General; (3) that Paden agreed to pay the churches the full face value of the bonds and was not to receive a commission; (4) that there remained a total of $91,000.00 in face value of the bonds purchased by General through Paden for which the respective churches had not received payment. The district court concluded that the churches are entitled to the return of the bonds plus coupons, if in the possession of General, and, if not, to a money judgment against General and Knox for the face value of the bonds plus coupons.
 
 
 4
 On appeal General and Knox make five contentions which we will consider in order.
 
 
 First and Second Claimed Errors
 
 
 5
 (1) "The district court abused its discretion in denying appellants the right to withdraw erroneous stipulations." (2) "In the absence of proof of the use of instrumentalities of interstate commerce in inducing or effecting a sale of bonds, such sale did not violate the Securities Exchange Act."
 
 
 6
 These two contentions may be considered together because, on the former appeal, this Court first expressed its interpretation of the stipulations now sought to be withdrawn,[3] and then, based on the facts so stipulated, drew its conclusion:
 
 
 7
 "It follows that the purchases which [General] made from the appellant churches through their agent Paden were in violation of § 15(a) (1) of the Exchange Act, supra."[4]
 
 
 8
 391 F.2d at 362.
 
 
 9
 On the original trial, Mr. Garrett, the attorney for the present appellants, General and Knox, called Knox as his first witness. The stipulations were made during the cross-examination of Knox by Mr. Burrow, attorney for the churches:
 
 
 10
 "Q. Yes, and you have been doing business out of the state, I believe? I said — you have?
 
 
 11
 "A. There might be one or two transactions is all out of state.
 
 
 12
 "Q. Now, I want to shorten this as much as I can, but we're [sic] taken your deposition heretofore —
 
 
 13
 "MR. GARRETT:
 
 
 14
 "Your Honor, in order to shorten it, we have stipulated that he has no license as a broker-dealer, and if that's material here, it's a matter of law.
 
 
 15
 "MR. BURROW:
 
 
 16
 "Will you stipulate also that he used the mails and engaged in Interstate Commerce?
 
 
 17
 "MR. GARRETT:
 
 
 18
 "I don't think there's any question about it.
 
 
 19
 "MR. BURROW:
 
 
 20
 "You do so stipulate?
 
 
 21
 "MR. GARRETT:
 
 
 22
 "Surely.
 
 
 23
 "MR. BURROW:
 
 
 24
 "And you stipulate that he should have had a Federal license?
 
 
 25
 "MR. GARRETT:
 
 
 26
 "I'm really not absolutely convinced on that yet myself, but I think that's a matter of law. He used the mails in connection with some of these transactions. Some of these bonds were from out of state. He didn't have a license, and if that's material to the case, I don't know about it, but we are willing to stipulate.
 
 
 27
 "MR. BURROW:
 
 
 28
 "That he used the mails at the time?
 
 
 29
 "MR. GARRETT:
 
 
 30
 "Surely.
 
 
 31
 "MR. BURROW:
 
 
 32
 "You so stipulate?
 
 
 33
 "MR. GARRETT:
 
 
 34
 "Surely."
 
 
 35
 There is, of course, no contention that the record was incorrectly transcribed. Rather the contention is that Mr. Garrett, "laboring under the delusion that the Securities Exchange Act was inapplicable to transactions in church bonds," did not intend for this stipulation to refer to the use of the mails in connection with the purchase of the bonds here involved. Attached to the "Motion for Relief from Stipulations" were extracts from Knox's deposition to which reference had been made just before the stipulations were reached. In that deposition Knox testified that in purchasing the bonds from Paden, "I paid for those here in the office." Paden was examined as a witness but was not questioned about the correctness of Knox's testimony. Nor did the churches offer other evidence to prove that General or Knox made use of the mails, telephone, or other instrumentality of interstate commerce to induce the sale of the bonds or to effect the transactions in question.
 
 
 36
 It was not until after the trial that General and Knox, in their original brief filed in the district court and later in briefs and their petition for rehearing filed in this Court of Appeals, expressed their view that the stipulation did not refer to the use of the mails in connection with the purchases of the bonds involved in this suit. As has been stated, this Court expressly ruled to the contrary. We are now satisfied that that was correct.
 
 
 37
 Mr. Garrett knew that the churches' attorney, Mr. Burrow, did not share his "delusion," but was attempting to prove a case under the Securities Exchange Act, and to that end was requesting the stipulations "to shorten this as much as I can." That end would not be served if, notwithstanding the stipulations, he had to prove that General or Knox made use of the mails or some means or instrumentality of interstate commerce in the transactions in question.
 
 
 38
 We emphasize that it is not the existence of the stipulations but their meaning which is questioned. This Court on the former appeal made that interpretation, and it became a part of the law of the case.[5] It follows that, in the absence of additional evidence, the district court could not thereafter exercise a discretion to permit General and Knox to withdraw the stipulations. It is thus impossible for General and Knox to meet the tests prescribed by the decisions on which they rely[6] to be relieved of stipulations to prevent manifest injustice.
 
 
 Third Claimed Error
 
 
 39
 (3) "There was no privity of contract between appellants and the churches and the findings of the district court with reference to Paden's status in sales of bonds to appellants are contrary to the evidence."
 
 
 40
 This Court in the previous appeal concluded that "it does appear that [General] would not be liable to the churches on any transaction where no privity of contract existed between the church and [General]." 391 F.2d at 363. The Court further pointed out:
 
 
 41
 "It also follows from the privity rule that [General] will be liable only on those purchases which were made from Paden acting for the appellant churches and not from Paden individually. In two instances, representatives of the churches testified that they sold the bonds to Paden. Paden disputed this and thus the District Court must make specific findings of facts in this regard."
 
 
 42
 391 F.2d at 363. On remand the district court in its findings of fact stated:
 
 
 43
 "6. Paden did not purchase the bonds of any of the churches. He acted as the agent of the churches in all sales of bonds to [General]. No bonds were purchased by [General] from Paden individually. This finding applies particularly to the two churches, Ecorse and Everman, in which there was a conflict in the testimony."
 
 
 44
 General and Knox contend that there is no sufficient evidence to support these findings either as to all the bonds or as to any specific bonds.
 
 
 45
 The district court, after considering the conflicting testimony, found that Paden had acted as agent for the churches in the sale of the bonds belonging to Everman Church of Christ and Ecorse Church of Christ. There was evidence of the agency relationship.[7] We cannot set aside the finding of the district court as clearly erroneous. Rule 52(a), Fed. R.Civ.P.
 
 
 46
 General and Knox also contend that newly discovered evidence,[8] set out in affidavits attached as exhibits to their motion for new trial, shows that Paden sold the bonds to World Oil & Gas of Delaware who, in turn, sold them to General. From those affidavits, it would appear that Paden did transfer (not sell) church bonds to World Oil & Gas. It is clear from the record that the district court could properly find that the bonds in question were sold to General by Paden, who represented to Knox that he was "placing the bonds" for the churches. The district court did not abuse its discretion in denying the motion for a new trial. See Whiteman v. Pitre, 5 Cir., 1955, 220 F.2d 914.
 
 
 Fourth Claimed Error
 
 
 47
 (4) "Appellants were deprived of the right to develop their case fully and fairly."
 
 
 48
 Appellants' contention is based on four points. They first contend that appellees on the morning of the trial in 1966 filed new matters and theories which appellants did not have a fair opportunity to contest. The amended pleadings filed in the district court on remand gave appellants an opportunity to meet any "new matters and theories" and the district court did not abuse its discretion in proceeding with the trial.
 
 
 49
 Appellants also contend that there was newly discovered material evidence of which they were not aware at the trial in 1966. As has been discussed under the third claim of error, appellants' claim of newly discovered evidence is based solely on affidavits attached to their motion for a new trial — alleging that the bonds in question were sold to appellants by World Oil & Gas. The affidavits in question were notarized in March 1967, and apparently were before the district court on remand, when it rendered new findings of facts and conclusions of law. We find no abuse of discretion.
 
 
 50
 Appellants' next contention is that the evidence before the district court did not answer the questions on remand and that the district court should have allowed appellants to introduce new evidence in support of their amended pleadings. This case was remanded for further findings and conclusions (not a retrial), with the direction that the findings and conclusions could be made on the same record or the record as supplemented, all in the discretion of the district court. 391 F.2d at 363. The district court on remand allowed amended pleadings, and did not abuse its discretion in not accepting further evidence.
 
 
 51
 Appellants finally contend that certain churches have received their bonds or funds therefor, and that Paden received some of the bonds in question as a fee. Appellants argue that they are entitled to receive credit for these amounts and that the district court erred in accepting statements of the churches as to the credit due appellants, without giving appellants an opportunity to cross-examine or present evidence as to such credit. Appellants' argument is founded principally on (1) funds in possession of a receiver after a sale of the assets of Paden and World Oil & Gas and (2) bonds received by Paden as a fee.
 
 
 52
 As to the funds in possession of the receiver, it is not appellees' obligation or duty to attempt to obtain the funds to meet appellants' claim against Paden and World Gas & Oil.
 
 
 53
 In its previous opinion, this Court, reversing the district court's holding, held that none of the bonds were delivered to Paden by appellee churches as fees. 391 F.2d at 363 n. 4. The Court did not reach the question of whether or not Paden was to receive a commission. On remand the district court specifically found that Paden agreed to pay the appellee churches the full face value of the bonds; he was not to receive any commission for the sale of the bonds. The district court's finding is not clearly erroneous.[9]
 
 
 Fifth Claimed Error
 
 
 54
 (5) "The district court erred in denying trial by jury of the fact issues."
 
 
 55
 On the prior appeal, the churches' contention that they had been denied a jury trial was deemed "frivolous." The Court noted that the churches did not seek a jury trial or raise objection to proceeding without a trial. 391 F.2d at 359. On remand, in a pretrial order, the district court ordered "that the Plaintiff churches may have a jury." (Emphasis added.) (App. 15.) Appellants contend that, upon this determination by the district court, the court could not thereafter deny a jury trial without the consent of both sides. Rule 38(d), Fed.R. Civ.P.
 
 
 56
 Rule 38(d)[10] does not support appellants' contention that the district court erred in denying trial by jury of the fact issues. None of the present parties made a demand for a jury trial in accordance with Rule 38(b). The Court, in the exercise of its discretion,[11] relieved the churches of their waiver of trial by jury, but, after being so relieved, the churches did not demand a jury trial. Thus, the "withdrawal without consent" provision of Rule 38(d) is inapplicable.
 
 
 57
 We find no reversible error in the record. The judgment is
 
 
 58
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Formerly National Plan, Inc., but for clarity referred to throughout as General
 
 
 [2]
 Only five of the original seven churches are now involved
 
 
 [3]
 "It was stipulated that [General] had not registered as either a broker or dealer under the Act, that the mails were used in the transactions in question and that they took place in interstate commerce." 391 F.2d at 361
 
 
 [4]
 Section 15(a) (1) of the Exchange Act, 15 U.S.C.A. § 78o(a), had been quoted in footnote 2 at p. 361 of the opinion:
 "Section 15(a)(1) of the Exchange Act provides:
 "No broker or dealer (other than one whose business is exclusively intrastate) shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) otherwise than on a national securities exchange, unless such broker or dealer is registered in accordance with subsection (b) of this section."
 391 F.2d at 361.
 
 
 [5]
 Lincoln National Life Ins. Co. v. Roosth, 5 Cir. 1962, 306 F.2d 110; Lumbermen's Mutual Casualty Co. v. Wright, 5 Cir. 1963, 322 F.2d 759
 
 
 [6]
 Central Distributors, Inc. v. M. E. T., Inc., 5 Cir. 1968, 403 F.2d 943, 945-946; Logan Lumber Co. v. Commissioner of Internal Revenue, 5 Cir. 1966, 365 F.2d 846, 855; Laird v. Air Carrier Engine Service, 5 Cir. 1959, 263 F.2d 948, 953; Russell-Miller Milling Co. v. Todd, 5 Cir. 1952, 198 F.2d 166, 168-169
 
 
 [7]
 There is evidence that appellant Knox considered Paden to be an agent for the churches (R. 33, 68, 70, 71) and that Paden considered himself an agent to "place the bonds" (R. 184). Although the representatives of the Ecorse and Everman churches testified that Paden was buying the bonds (R. 127, 152), the testimony of Paden demonstrates that he was "placing the bonds" (R. 130, 183-84), and he in fact informed the Ecorse church of "his placing the bonds."
 
 
 [8]
 The churches claim that the affidavits attached to the motion have been on file for two or three years and were considered by the district court. The affidavits were notarized in March 1967, long before February 27, 1969, when the case was heard on remand and before the entry of judgment on March 3, 1969
 
 
 [9]
 Although Paden testified that he received a commission on certain sales of bonds to General (R. 211), there is no evidence that commissions were received, or were to be received, on the sales of the bonds in question
 
 
 [10]
 Rule 38(d) reads: "The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties."
 
 
 [11]
 See 5 Moore's Federal Practice, 2nd ed. ¶ 39.09