SECURITIES AND EXCHANGE COMMISSION

v.

TELECOM MARKETING, INC.; Telecom Industries, Inc.; Barry Smith; Midas Media, Inc.; Jeffrey Jolcover; Century Wireless Communications Corp.; Ron Schroeder: Tri–Star Communications, Inc.; Paul Iwankowski; Brixel, Inc.; and John Field, IV.

Civ. No. 1:95–cv–804–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 24, 1995.

---

7. See also this court's order regarding motions to tax costs entered simultaneously herewith.

Edward Gary Sullivan, John S. Watts, III, S.E.C., Atlanta, GA, for S.E.C.

James David Dantzler, Jr., Hicks, Maloof & Campbell, Atlanta, GA, Mark S. Dzarnoski, Office of Mark S. Dzarnoski, Las Vegas, NV, pro hac vice, for Telecom Marketing, Inc., Telecom Industries, Inc., Midas Media, Inc.

Mark S. Dzarnoski, Office of Mark S. Dzarnoski, Las Vegas, NV, pro hac vice, for Barry Smith, Jeffrey Jolcover.

Paul L. Hanes, Office of Paul L. Hanes, Atlanta, GA, Stephen D. Halfhill, Office of Stephen D. Halfhill, McLean, VA, pro hac vice, for Century Wireless Communications Corp., Ron Schroeder, Tri-Star Communications, Inc., Paul Iwankowski.

Paul L. Hanes, Office of Paul L. Hanes, Atlanta, GA, John A. Field, III, Office of John A. Field, III, McLean, VA, pro hac vice, for Brixel, Inc., John Field, IV.

Paul L. Hanes, Office of Paul L. Hanes, Atlanta, GA, for Charles Hoffecker.

James David Dantzler, Jr., Hicks, Maloof & Campbell, Atlanta, GA, for William G. Hays, Jr.

## *ORDER*

ORINDA D. EVANS, District Judge.

This civil action alleging violations of 15 U.S.C. §§ 77q(a)(1) and (2), 78j(b), 77e(a) and (c), and 78o(a)(1) is before the court on this court's March 28, 1995 order to show cause why Plaintiff's motion for preliminary injunction should not be granted. Defendants filed responses and were represented at a hearing on the matter. Motions to dismiss, to accept for filing a response in excess of thirty pages, and for protective order have been filed by Defendants Smith, Jolcover, Telecom Marketing, Inc. ("Telecom–Mobile"), and Telecom Industries, Inc. ("Telecom–Madison")

and Midas Media, Inc. ("Midas"). Smith and Jolcover filed a motion for leave to appear on behalf of Midas, Telecom–Mobile, and Telecom–Madison which was not opposed. Field and Brixel, Inc. move to dismiss and join in the above-mentioned motion for protective order. Defendants Brixel, Inc. and John A. Field IV filed a ". . . consolidated motion to terminate asset freeze and/or to modify asset freeze to permit the payment of reasonable and necessary living expenses. Defendants Century Wireless Communications, Inc. ("Century"), Schroeder, Tri–Star Communications, Inc. ("Tri–Star"), and Iwankowski responded to the show cause order with a filing styled "motion in opposition to entry of preliminary injunction . . . and consolidated motion to terminate the asset freeze to permit the payment of reasonable and necessary expenses and attorney's fees." Plaintiff filed a motion for Fed.R.Civ.P. 37 sanctions which it subsequently withdrew.

On March 28, 1995, Plaintiff moved for a temporary restraining order. After an *ex parte* hearing on the matter, the court granted the motion. It ordered Defendants to appear on April 11, 1995 to show cause why Plaintiff's motion for preliminary injunction should not be granted. It also ordered, *inter alia,* expedited discovery, the freezing of Defendants' assets, and an accounting of all funds received pursuant to the scheme described in the complaint. The court also appointed a receiver and scheduled a preliminary injunction hearing on April 11, 1995. At the hearing, Plaintiff presented testimony through one live witness. All parties offered documentary exhibits into evidence.[1] Having considered the evidence, arguments, and filings of counsel, the court makes the following findings of fact and conclusions of law.

Between April 1993 and April 1994, Telecom–Mobile, a marketing firm controlled by Smith, offered and sold units in a general partnership formed to invest in a wireless cable television system in Mobile, Alabama.[2] The partnership was called Mobile Wireless Partners General Partnership ("Mobile Partners"). Midas, which is controlled by Jolcover, also promoted the offering. Midas had obtained the rights to certain wireless cable licenses in Mobile for approximately $300,-000. It transferred its rights to a joint venture and then was to sell up to 75% of the joint venture to Mobile Partners. The promotional materials do not disclose the price Midas paid for the licenses. They show, however, that Telecom–Mobile intended to sell 2450 units in the partnership (raising approximately $10.5 million) and that $2 million in working capital would be invested.[3] The partnership agreement states that 15% of the partners' capital contributions may be distributed as commissions to selling agents; however, in reality, up to 50% of the proceeds raised went to sales commissions.

Some of the Mobile Partners' promotional materials state that the lease for the four Mobile channels designated as the F–Group was assigned to Midas and an FCC error delayed license issuance to the lessor. The record shows that in December 1992, Jolcover entered into an agreement with the lessee of the F–Group channels. Their owner, the lessor, actually held the FCC license for the channels. However, in August 1993, the lessee learned that the FCC had revoked the license for the F–Group channels and discussed this with Jolcover. Thus, Jolcover knew in August 1993 that the promotional materials incorrectly stated the resources of the Mobile wireless cable business. The Federal Communications Commission (FCC) subsequently informed Plaintiff that the licenses for the F–Group channels had not been issued and there were no pending applications for the licenses. In fact, the FCC placed a freeze on applications to acquire channels in Mobile.

---

1. The court has received affidavits or declarations Attorney Dzarnoski filed on April 18, 1995. They have been considered and are of only tangential relevance to the issues addressed in this order.

2. The offices of both these corporations are located in Washington, D.C.

3. According to Plaintiff, after paying 50% sales commissions and the promised $2 million in working capital, if all the units in Mobile Partners were sold, the promoters (Smith, Telecom–Mobile, Jolcover and Midas) would receive approximately $3.25 million for a 75% interest in the Mobile licenses.

Articles included in the Mobile promotional materials also touted the expertise of certain participants in the wireless cable business, including the Mitchell Communications Corporation ("Mitchell"). The materials state that Mitchell had secured financing to build wireless systems in over forty markets and was poised to expand nationwide in a very short time. In reality, however, by late 1992 the financing had evaporated and Mitchell's president had informed Jolcover that Mitchell was selling its licenses because it lacked the necessary funding to develop the market.

Beginning in April 1994, Telecom–Madison, a marketing firm also controlled by Smith, offered and sold units in a general partnership formed to acquire a controlling interest in a preexisting wireless cable television system in Madison, Wisconsin. Midas also promoted the offering. The partnership was called Wisconsin Wireless Partners General Partnership ("Wisconsin Partners"). Through a subsidiary of Midas, Jolcover paid $750,000 for the preexisting cable system. The Madison promotional materials did not disclose the price of the preexisting cable system, but revealed that the wireless system was to be transferred to a joint venture and up to 90% of the system was to be sold to Wisconsin Partners. The promotional materials also show that the promoters agreed to provide $2.1 million in working capital funds and intended to sell 3,850 units in the partnership at prices ranging from $3,750 to $5,450 per unit, raising approximately $18 million.[4] The partnership agreement indicates that 15% of the partners' capital contributions may be distributed as commissions to selling agents. However, up to 50% of the proceeds raised went to sales commissions. An investor's deposition testimony indicates that Smith, Jolcover, Midas, Telecom–Madison, their agents, and others retained a 15% to 18% interest in Wisconsin Partners.

Century, Tri–Star, and Brixel operated a network of telemarketing sales rooms which solicited investors in these partnerships throughout the country.[5] These corporations were run by Schroeder, Iwankowski, and Field respectively. Potential investors were contacted, screened, and sent Telecom–Mobile or Telecom–Madison's written promotional materials. These materials were substantially similar except that the Mobile offering was intended to build a new wireless system and the Madison offering was to acquire the preexisting wireless system. The promotional materials were followed up by high pressure, scripted telephone sales solicitations. At least some of the telephone solicitations at Century were made with fake southern accents by solicitors who gave false names in order to seem ethnically similar to potential investors living in the South. Some telephone solicitors targeted middle-aged, working-class males who had no connection with law, accounting, or the cable television industry.

None of the Defendants selling the partnership units registered with the Securities and Exchange Commission ("SEC") as a broker or dealer. No registration statement was filed with the SEC in connection with the Mobile or Madison offerings.

The partnership units in both Mobile Partners and Wisconsin Partners were sold to over 2,600 investors residing throughout the United States. A number of investors resided in the Northern District of Georgia.

Under both partnership agreements, the managing partner handled the partnerships' day to day ministerial affairs. Major decisions, such as dissolving the partnership, executing an assignment for the benefit of creditors, or acquiring or selling a license or equity interest in a wireless cable system, required the written consent of the majority of partners. The partnership agreements required the establishment of five-member advisory committees to review information and recommend courses of action relating to the development of the system, including

---

4. According to Plaintiff's calculations, allowing for 50% sales commissions and the promised $2.1 million investment in working capital, if all the units in Wisconsin Partners were sold, the promoters would receive approximately $7 million for the 90% interest in the preexisting cable system.

5. Century was located in Palm Springs, California, Tri–Star was located in Fort Lauderdale, Florida, and Brixel was located in McLean, Virginia.

equipment selection, programming, marketing, and advertising.

Smith and Jolcover participated in various aspects of the two offerings. They both negotiated to have Century sell the partnership units at a 50% commission on all sales. Smith also signed the agreement between Telecom–Madison and Tri–Star. Tri–Star received 50% from the sale of each partnership unit. Smith directed the dissemination of promotional materials and personally sold units of Wisconsin Partners to at least one investor, who purchased five partnership units in April 1994 after Smith assured him that the partnership would eventually convert to a limited liability company. Smith also falsely told a meeting of Wisconsin Partners investors in October 1994 that 85% of their money was going to purchase 90% of the system.[6] Jolcover created a ten-year cash flow projection which was included in the Mobile Partners promotional material.

In marketing Mobile Partners, potential investors were told that Midas had previously developed a successful wireless cable system in Omaha, Nebraska. Some of the Mobile Partners promotional materials indicate that the Omaha system was broadcasting cable TV programming over twenty-one channels to Omaha area residents. However, on July 12, 1993, the Federal Trade Commission ("FTC") filed suit against Midas alleging unfair and deceptive trade practices in the offer and sale of investments in three wireless cable systems, including the Omaha system. Specifically, the FTC alleged that Midas claimed to have rights to wireless cable licenses which it did not possess. The court in that case recently found that Jolcover and Midas engaged in fraudulent misrepresentation. A special master appointed in the FTC action conducted a viability study showing that the Omaha system was not successful in that it had only about fifty subscribers, had not achieved a positive operating cash flow, the location of the transmitter constrained its ability to grow, its programming was inferior to its competitors, and it was undercapitalized. Further, the study showed that Midas has the rights to only four permanent wireless channels in

Omaha, rather than the twenty-one mentioned in the promotional materials. Midas also has the rights to a thirty-one channel two-year experimental license which was renewed on February 1, 1993, but it is restricted to providing service to a maximum of only 1,000 receivers.

Plaintiff seeks a preliminary injunction prohibiting Defendants from, *inter alia,* violating the above-mentioned sections of Title 15. It argues that the agreements to purchase units in Mobile Partners and Wisconsin Partners were investment contracts and therefore securities within the meaning of 15 U.S.C. § 77b(1). Plaintiff asserts this is because the partners solicited by Defendants are (1) so inexperienced and unknowledgeable in business affairs that they are incapable of intelligently exercising their partnership powers; (2) so dependent on the unique managerial skills of the promoters that they cannot replace them or otherwise exercise meaningful partnership powers; and (3) so numerous that they are prevented from exercising meaningful partnership control. Plaintiff also maintains that Defendants illegally offered and sold unregistered securities through the use of interstate facilities and the mails. Plaintiff contends that Defendants are all liable as underwriters. In addition, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 77q(a)(1) and (2) by intentionally making misrepresentations and omissions of material fact in connection with the Mobile and Madison offerings by (1) falsely stating that the sellers' commissions were 15%; (2) failing to disclose the cost of the wireless cable assets to be transferred to the partnerships; (3) falsely stating that Midas owned the rights to the F–Group licenses; and (4) overstating the success of Mitchell and the Omaha system. Plaintiff further asserts that Defendants failed to register as brokers when they offered and sold the partnership units by making use of the mails and other means of interstate commerce.

Defendants Smith, Jolcover, Telecom–Mobile, and Telecom–Madison respond that, because the partnership units are not securities, the securities laws do not apply and

---

**6.** John Field, IV also gave a speech at this meeting.

Plaintiff lacks jurisdiction over them.[7] These Defendants maintain that (1) the partners participate substantially in the management and control of the partnership; (2) the managing partner's duties are purely ministerial; (3) the partners need not possess financial sophistication to exercise intelligently their partnership powers; (4) the Risk Disclosure Document accompanying the promotional materials specifically states that partners must make their own decisions and not rely on the expertise of others; and (5) the functions of the managing partner require no unique abilities or special expertise. In addition, these Defendants argue that there is no threat of substantial irreparable injury if relief is not granted because sales of the partnership units have ceased and if Defendants were going to dissipate assets they would have done so in 1993 when the FTC action commenced or when they learned the SEC was investigating them in February 1994. They assert that in the FTC action the asset freeze order and receivership appointment were vacated within two weeks of commencement. They request that this case be handled similarly and they should be required to notify Plaintiff and the court of the intent to make expenditures of over $10,000 and permit Plaintiff five days to challenge the expenditure.

Field and Brixel respond to Plaintiff's motion by arguing that Brixel is primarily a service and management company which provides office suite arrangements and none of the funds currently in its bank accounts were connected with the telephone solicitations reported in the complaint. They assert that Brixel has not participated in the telemarketing at issue since August 1993. They maintain that Plaintiff's evidence of their involvement derives solely from Chris Hintz, a convicted rapist and substance abuser who managed a telemarketing organization offering units in Mobile Partners. They claim that during the relevant time period Brixel maintained Hintz as an employee in Brixel's rec-

ords so there would be no disruption in his health insurance and he could demonstrate stability in employment following his rape conviction. Field and Brixel contend, however, that Brixel had no responsibility or authority with respect to Hintz's activities. They also maintain that no evidence suggests that Field or Brixel were involved in any solicitation. They request that the asset freeze be terminated or modified to allow payment of reasonable and necessary living and business expenses and attorney's fees.

Defendants also filed motions to dismiss, reiterating the jurisdictional issue and arguing that venue is improper in this district because none of the Defendants maintain offices, conduct operations, maintain assets, or have agents residing here.

■ Turning to the jurisdictional issue, investment contracts are included in 15 U.S.C. § 77b(1)'s definition of a security. Investment contracts exist where there is (1) an investment of money; (2) in a common enterprise; (3) based upon an expectation of profits to be derived solely from the efforts of individuals other than the investor. *Williamson v. Tucker*, 645 F.2d 404, 417 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).[8] The promoter need contribute only "entrepreneurial or managerial efforts." *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). Further, the term "solely" is not interpreted literally. Instead, economic reality must govern over form. *Williamson*, 645 F.2d at 418.

■ As a general rule, general partnerships are not deemed securities because the partners usually have the power to exercise significant control over the partnership's affairs. However, when

> the partner has irrevocably delegated his powers, or is incapable of exercising them, or is so dependent on the particular expertise of the promoter or manager that he

---

**7.** Century, Schroeder, Tri–Star, and Iwankowski adopted this response. Field and Brixel adopt the portion of this response objecting to a continuation of the asset freeze and the granting of preliminary injunctive relief.

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit handed down prior to October 1, 1981.

has no reasonable alternative to reliance on that person, then his partnership powers may be inadequate to protect him from the dependence on others which is implicit in an investment contract. *Id.* at 423.

■ The partnership documents provide *pro forma* evidence that the partners possessed real power. In reality, however, investors were targeted for their ignorance of law, accounting, and the wireless cable television industry. In addition, the promotional materials tout the expertise of Mitchell and Midas' vice president, Leonard Gregory, to coordinate or aid in the development of the wireless cable business. Further, the number of partnership units sold so dilutes each partner's power that in actuality it appears none could exercise any meaningful partnership control. In fact, testimony shows that Wisconsin Partners is in disarray due to confusion caused by the large number of partners. *Cf. id.* at 423 (investment contract may exist where the number of partners makes a vote more akin to a corporate shareholder vote). Moreover, the evidence shows that Smith, Telecom–Madison, Jolcover and Midas retained sufficient control over Wisconsin Partners to require their cooperation in making certain decisions. Under these circumstances, the court finds that, due to Defendants' actions, the partners were unable to exercise meaningful partnership powers. *Id.* at 424. Consequently, the purchase agreements for the partnership units were investment contracts and jurisdiction under the securities laws is extant.

■ The court further finds that venue is appropriate in this district. Venue is proper under 15 U.S.C. § 78aa in any district where (1) any act or transaction constituting the violation occurred or (2) where the defendant is found, is an inhabitant, or transacts busi-

ness. *Clement v. Pehar*, 575 F.Supp. 436, 439 (N.D.Ga.1983) (Shoob, J.). The act or transaction contemplated by this section "need not be crucial" but it must be of "material importance to the consummation of the scheme." *Id.* at 441 (quoting *Hilgeman v. National Ins. Co.*, 547 F.2d 298, 301 (5th Cir.1977). Such an act occurs when a defendant reaches into the district to obtain investors for a fraudulent scheme. *Id.*

■ The record shows that Smith sold Daniel Lyons, a resident of Atlanta, Georgia, units in Wisconsin Partners. Lyons purchased five units for $21,250. In addition, the government proffered a list of Wisconsin Partners investors which includes at least fifteen residents of this district. This evidence is sufficient to support venue in the Northern District of Georgia.

■ To obtain a preliminary injunction, Plaintiff must first establish, as a threshold matter, that there have been violations of the securities laws. *SEC v. Big D Oil & Gas Co.*, 434 F.Supp. 589, 590 (N.D.Tex.1977). In analyzing the need for injunctive relief, courts must then focus on whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct. *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir.1978). Factors to be considered are the degree of scienter involved, the isolated or recurrent nature of the infraction, the sincerity of the defendant's assurances against future violations, and the likelihood, based on the defendant's occupation, that future violations might occur. *SEC v. Bonastia*, 614 F.2d 908, 912 (3rd Cir.1980).

■ Plaintiff has met its initial burden. It is unlawful to offer or sell unregistered securities through the instrumentalities of interstate commerce. 15 U.S.C. §§ 77e(a) and (c).[9] Defendants have not claimed that they

---

9. These subsections state:
   (a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person . . .
       (1) to make use of any means or instruments for transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
       (2) to carry or cause to be carried through the mails or in interstate commerce, by any

means or instruments of transportation, any such security for the purpose of sale or for delivery after sale . . .
   (c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has

were entitled to any exemptions under 15 U.S.C. § 77d. The evidence shows that no registration statement was in effect as to the investment contracts, and Defendants offered and sold them through the use of interstate telemarketing. Smith personally solicited an investment from at least one investor. Jolcover negotiated the acquisition of the cable licenses or systems in Mobile and Madison and composed some of the Mobile promotional materials. The telemarketing Defendants solicited investors.

The record also shows that Brixel sold units in both Wisconsin Partners and Mobile Partners and Field owned Brixel. Brixel purportedly raised between $2 and $4 million in 1994 selling units in Mobile Partners, taking a commission of between 49% and 52% on each unit. This evidence counters Field and Brixel's argument that they have not participated in the telemarketing at issue since August 1993 and that no evidence suggests that Field or Brixel was involved in any solicitation. Hintz, a convicted felon and self-professed former sales manager for Brixel, provided this information. Hintz's criminal history does not render his testimony inadmissible. The evidence further shows that Field addressed a meeting of Wisconsin Partners attended by partner Daniel Lyons. In light of this evidence, dismissal of Field and Brixel at this stage of the proceedings is inappropriate.

It is unlawful to intentionally employ any device, scheme, or artifice to make material misrepresentations or misleading omissions which operate as a fraud in the offer or sale of securities through the instrumentalities of interstate commerce.[10] The evidence shows that Defendants made material misrepresentations and omissions. For example, the partnership agreements state that 15% of the partners' capital contributions might be distributed as commissions to selling agents; however, in reality, up to 50% of the proceeds raised went to sales commissions. In addition, the written promotional materials fail to state the prices actually paid for the wireless cable assets which were to be transferred to Wisconsin Partners and Mobile Partners. The evidence shows that $300,000 was paid for the Mobile cable assets and the Mobile offering was to raise up to $10 million to buy them. Likewise, the Wisconsin offering was to raise up to $18 million for a wireless system the promoters bought for $750,000. The Mobile promotional materials falsely claim that Midas owned the rights to the four F–Group channels and overstated Mitchell's success. The materials also overstate the success of the Omaha system. The court finds that this evidence is sufficient to meet Plaintiff's initial burden on the fraud counts.

It is also illegal for unregistered dealers and brokers to offer or sell securities through the use of the instrumentalities of interstate commerce. 15 U.S.C.

---

been filed as to such security, or while the registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

10. Sections 77q(a)(1) and (2) state:
It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation in interstate commerce or by the use of the mails directly or indirectly—
(1) to employ any device, scheme, or artifice to defraud, or
(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.
Section 78j(b) states:
It shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may proscribe as necessary or appropriate in the public interest or for the protection of investors.

§ 78o(a)(1).[11] A dealer is "any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person." 15 U.S.C. § 77b(12). A broker is "any person engaged in the business of effecting transactions in securities for the account of others." *Eastside Church of Christ v. National Plan, Inc.,* 391 F.2d 357, 361 (5th Cir.), *cert. denied,* 393 U.S. 913, 89 S.Ct. 234, 240, 21 L.Ed.2d 198 (1968). The evidence shows that all the Defendants or their agents except Jolcover offered and sold partnership units.

The evidence is unclear as to whether or when Defendants ceased soliciting investors in their scheme. The record shows, however, an intentional, repeated effort on Defendants' part to mislead and defraud investors in the partnerships. The above-described evidence persuades the court that there is a reasonable likelihood of a recurrence of these activities sufficient to warrant the issuance of a preliminary injunction. The asset freeze [12] and receivership shall remain in effect.

Defendants move for a protective order relating to the currently expedited discovery schedule. Specifically, they argue that, because a receiver has been appointed, they are not able to respond to the discovery requests. They claim they were not properly served with the show cause order and copies of the complaint have not been served on the registered agents of the corporate Defendants. At the hearing, Plaintiff indicated that it would attempt to cooperate with Defendants as to the discovery schedule. If this schedule does not cure Defendants' complaints, they may renew their motion.

Accordingly, Defendants' motions to dismiss [## 19, 20, 23] are DENIED. The motion to accept for filing a response in excess of thirty pages [# 17] by Defendants Smith, Jolcover, Midas, Telecom–Mobile, and Telecom–Madison is GRANTED. Defendants Smith and Jolcover's motion for leave to appear on behalf of Midas, Telecom–Mobile, and Telecom–Madison [# 16] is GRANTED as unopposed. Defendants' motions for protective order [## 14, 22] are DISMISSED without prejudice. Defendants Brixel, Inc. and Field's consolidated motion to terminate asset freeze and/or to modify asset freeze to permit the payment of reasonable and necessary living expenses [# 18] is DENIED. Defendants Century, Schroeder, Tri–Star, and Iwankowski's motion in opposition to entry of preliminary injunction and consolidated motion to terminate the asset freeze to permit the payment of reasonable and necessary expenses and attorney's fees [# 25] is DENIED. Plaintiff's motion for sanctions [# 26] is DISMISSED as moot.

Further, Plaintiff's motion for preliminary injunction [# 2] is GRANTED. It is hereby ORDERED that Defendants Telecom–Mobile, Telecom–Madison, Smith, Midas, Jolcover, Century, Schroeder, Tri–Star, Iwankowski, Brixel and Field as well as their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, be and hereby are, until further order of this court, ENJOINED and RESTRAINED from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), by, directly or indirectly, through the use of any means or instrument of transportation and communication in interstate commerce, or of the mails,

---

**11.** This section states in pertinent part:

> It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

**12.** Although Defendants have requested relief from the asset freeze, the court has received no information identifying with specificity any bank accounts that actually have been affected by the freeze.

a. employing any device, scheme, or artifice to defraud;

b. obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c. engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser,

in the offer or sale of any security.

It is further ORDERED that, until further order of this court, Defendants Telecom–Mobile, Telecom–Madison, Smith, Midas, Jolcover, Century, Schroeder, Tri–Star, Iwankowski, Brixel and Field as well as their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, be and hereby are, until further order of this court, ENJOINED and RESTRAINED from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 40.10b–5, promulgated thereunder by, directly or indirectly, through the use of any means or instrumentalities of interstate commerce, or of the mails or of any facility of a national securities exchange,

a. employing any device, scheme, or artifice to defraud;

b. making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

c. engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

It is further ORDERED that, until further order of this court, Defendants Telecom–Mobile, Telecom–Madison, Smith, Midal, Jol-

cover, Century, Schroeder, Tri–Star, Iwankowski, Brixel and Field as well as their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, be and hereby are, until further order of this court, ENJOINED and RESTRAINED from violating Sections 5(a) and 5(c) of the Securities Act by directly or indirectly making use of means and instruments of transportation and communication in interstate commerce and of the mails to offer to sell and to sell securities and to carry and cause to be carried through the mails and in interstate commerce, by means and instruments of transportation, said securities for the purpose of sale and for delivery for sale without having registration statements filed with Plaintiff with respect to the securities.

It is further ORDERED that, until further order of this court, Defendants Century, Schroeder, Tri–Star, Iwankowski, Brixel and Field as well as their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, be and hereby are, until further order of this court, ENJOINED and RESTRAINED from violating Section 15(a) of the Exchange Act by engaging in business as a broker and dealer, not exclusively intrastate, and making use of the mails and of the means and instrumentalities of interstate commerce to effect transactions in or to induce or attempt to induce the purchase and sale of securities (other than an exempted security or commercial paper, bankers' acceptances or commercial bills), otherwise than on a national securities exchange, when not registered with Plaintiff as a broker or dealer in accordance with Section 15(b) of the Exchange Act. [15 U.S.C. § 78o(a)(1) ].

It is further ORDERED that, pending determination of the request for permanent injunction, the assets of all the Defendants be and hereby are frozen. All Defendants as well as their officers, agents, servants, employees, attorneys, and those persons in ac-

tive concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, hold and retain within their control, and otherwise prevent any disposition, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any funds or other assets derived from the sales of interests in Mobile Wireless Partners or Wisconsin Wireless Partners, presently held by them, under their control or over which they exercise actual or apparent investment or other authority, in whatever form such assets may presently exist.

It is further ORDERED that, pending final determination as to all of the parties to this action, all Defendants as well as their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order by personal service, facsimile transmission or otherwise, and each of them, are hereby ENJOINED from destroying, mutilating, concealing, altering, or disposing of any document referring or relating in any manner to any Defendants herein. As used in this order, "document" means the original and all non-identical copies (whether non-identical because of handwritten notation or otherwise) and all written or graphic matter, however produced, and any other tangible record, or electronic data compilation of any sort, including, without limitation, computer disks, computer diskettes, computer tapes, correspondence, memoranda, notes, minutes, telephone records, reports, studies, telexes, diaries, calendar entries, contracts, and letters of agreement, and including any and all existing drafts of all documents.

It is further ORDERED that all Defendants prepare and present to this court and to Plaintiff an accounting of all funds received pursuant to the scheme described in Plaintiff's complaint and of the disposition and use of said funds. This accounting shall include, but not be limited to, the name and address of each investor, the amount invested, the total amount received from investors and a listing of all expenditures showing the amount, to whom paid and the date of payment. This accounting shall be filed with the Clerk of this court and served upon Plaintiff

within thirty (30) days of date of entry of this order.

It is further ORDERED that this order does not preclude the Commission from seeking a permanent injunction, an accounting, disgorgement and prejudgment interest and the imposition of civil penalties, or any other relief in this action.

It is further ORDERED that this court retains jurisdiction of this matter for the purpose of enforcing this order.

SO ORDERED.